UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JANA FREAD-STERKENBURG,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:17-cv-780

Dlott, J.
Bowman, M.J.

## REPORT AND RECOMMENDATION

Plaintiff Jana Fread-Sterkenberg filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents a single claim of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the record as a whole.

### I. Summary of Administrative Record

In October 2014, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"), alleging disability beginning on June 1, 2010 but subsequently amended to June 1, 2014, based primarily upon mental impairments.[1] Plaintiff's Date Last Insured, for purposes of DIB, is September 30, 2014.

---

[1] Although Plaintiff also alleged that she was disabled from Raynaud's disease, degenerative disc disease, and tendonitis, she does not contest the ALJ's evaluation of her physical limitations in this judicial appeal. (*See* Tr. 24).

1

(Tr. 21). After her disability claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an ALJ.

On August 16, 2016, Plaintiff appeared with counsel and gave testimony before ALJ Mark Hockensmith; a vocational expert also testified. (Tr. 36-78). At 28 years old, Plaintiff was a younger individual on the date of her alleged disability and remained in the same age category at the time of the ALJ's decision.[2] She completed high school and has past relevant work as an STNA and as a home health aide, both of which jobs were semiskilled and performed at the medium exertional level. She lives with her boyfriend and three-year-old daughter and was expecting her second child at the time of the hearing.

On November 9, 2016, the ALJ issued an adverse written decision, concluding that Plaintiff is not disabled. (Tr. 19-30). The ALJ determined that Plaintiff has severe impairments of: "degenerative disc disease; Raynaud's disease; major depressive disorder; anxiety disorder; bipolar; attention deficit hyperactivity disorder (ADHD); and learning disability." (Tr. 21). The ALJ also recognized a history of alcohol abuse but determined that was no longer a severe impairment. Plaintiff does not dispute the ALJ's determination that none of her impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (Tr. 22).

The ALJ determined that Plaintiff cannot perform her past relevant work, but found that she retains the residual functional capacity ("RFC") to perform a restricted range of light work, subject to the following limitations:

---

[2] The ALJ made reference to Plaintiff being 24 years old on the alleged disability onset date, but that was her age on her original alleged onset date, prior to amendment of that date at the hearing. (Tr. 29).

2

> [S]he cannot climb ladders, ropes or scaffolds, but can frequently climb ramps and stairs, frequently stoop, kneel, crouch, and crawl. The claimant can frequently handle and finger bilaterally and must avoid concentrated exposure to extreme cold and cannot work at unprotected heights or with dangerous moving machinery. She is limited to simple, routine[] tasks, in a static work environment with few changes in routine, and no fast paced work or strict production quotas. The claimant can have occasional interaction with the public, coworkers, and supervisors.

(Tr. 23). Considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff could still perform a "significant number" of jobs in the national economy, including the representative jobs of hotel housekeeper, cafeteria attendant, and office helper. (Tr. 29-30). Therefore, the ALJ determined that Plaintiff was not under a disability. The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

In her appeal to this Court, Plaintiff argues that the ALJ improperly evaluated the medical opinion evidence.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must

present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

### B. Evaluation of Medical Opinions

Plaintiff argues that the ALJ committed reversible error by substituting his lay interpretation of evidence in place of the opinions of an examining consultant, Dr. Cherry. Though her argument is less developed with respect to the opinions of a treating psychiatrist, her claim broadly also includes the ALJ's analysis of Dr. Alshami's opinions. The undersigned finds no legal error in the ALJ's analysis of either of the two referenced opinions.

Longstanding social security regulations dictate a hierarchy of presumptive weight to be given to opinion evidence, with "controlling weight" to be given to treating source opinions that are "'well-supported' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004)); 20 C.F.R. §404.1527(c)(2).[3] An ALJ must provide "good reasons" if he does not give controlling weight to the opinion of a treating physician. *Id.* Next in the hierarchy is the weight given to consulting psychologists or physicians. In general, more weight is given to a consultant who examines the plaintiff than to the opinions of a non-examining consultant. *See* 20 C.F.R. §§404.1527(c)(1) and 416.927(c)(1). However, these regulatory presumptions are rebuttable. Thus, "[i]n appropriate circumstances, opinions

---

[3] A new rule set forth in 20 C.F.R. §404.1520c replaces the treating physician rule previously set forth in 20 C.F.R. § 404.1527. However, based upon the date of Plaintiff's applications in this case, the prior rule and related case law continue to apply. *Accord, Glanz v. Com'r of Soc. Sec.*, 2018 WL 3722318 at n. 5 (N.D. Ohio July 17, 2018).

5

from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96–6p, 1996 WL 374180, at *3; *see also generally,* 20 C.F.R. § 404.1527(c). The testimony of even a non-examining consultant can constitute substantial evidence to support the ALJ's decision when the expert's opinion is detailed and consistent with other medical evidence in the record. *Davis v. Chater*, No. 95–2335, 1996 WL 732298, at *2 (6th Cir. Dec. 19, 1996) and *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 570 (6th Cir.1989).

### a. Dr. Cherry

Dr. Cherry, Psy.D., performed a one-time consultative neuropsychologist evaluation on August 4, 2014 at the request of a treating physician, in order to determine whether Plaintiff should be excused from a requirement that she participate in a job training program that was required by the State of Alaska in order for her to receive state welfare benefits. (Tr. 318-335). Dr. Cherry's report reflects that although Plaintiff was born and raised in Ohio, she relocated to Alaska to live with her mother shortly before giving birth to her first child, since her mother was able to provide her with some financial support as well as help with childcare. (Tr. 322).

After diagnosing generalized anxiety disorder, PTSD, panic, social, bipolar disorder, ADHD and a learning disorder during his consultative exam, Dr. Cherry opined that Plaintiff receive a "continuation of social security disability." (Tr. 331).[4] He opined:

> At present, given her severe varied anxiety and mood disorder, she does not appear capable of full-time competitive employment, although if those issues evidence better resolution in the future, and she receives the right

---

[4]The reference to a "continuation" of "social security" benefits appears to be in error. Dr. Cherry's report refers repeatedly to Plaintiff's receipt of Alaska Temporary Assistance Program ("ATAP") benefits, a separate state welfare program that provides benefits to low-income families with children.

6

employment supports, and childcare supports, <u>she could be quite successful with employment in the future</u>.

(*Id.*, emphasis added). With respect to a state welfare requirement that Plaintiff participate in a job training program, Dr. Cherry noted that the specific program in which Plaintiff was enrolled required her to travel to a different training location "nearly every day" which "greatly exacerbates" her anxiety. (Tr. 331). Therefore, he concluded that "[a]t <u>present</u>, the patient is not capable of meaningful participation in any job training due to her varied severe anxiety and severe depression, <u>although that could change with better resolution of those issues in the future</u>." (*Id.*, emphasis added). Dr. Cherry recommended medical management and therapy, concluding that if her "issues with severe depression and severe varied anxiety can evidence better resolution, the patient would be an excellent candidate for DVR or other vocational programming." (Tr. 332).

Dr. Cherry cautioned against over-reliance on Plaintiff's neuropsychological test results, which he explained should be "considered to be of somewhat limited validity due to a pattern of at least mild overreporting of issues, which appears to reflect [Plaintiff's] desire to communicate her very high level of distress and feeling overwhelmed." (Tr. 325, 329). For example, "[o]n a self-reported inventory of psychopathology and personality functioning, the patient's obtained profile was considered to be of somewhat limited validity due to a pattern of overreporting issues, which reflects a desire to communicate her high level of distress...." (Tr. 327). In addition, he noted elevations on the negative impression management subscale of Plaintiff's Personality Assessment Inventory that suggested "that this patient may be making a cry for help and is presenting herself negatively....with probable impairment arising from somatic symptoms." (Tr. 332). Her intellectual scores were mostly in the average range. "Despite her report of global/severe cognitive dysfunction during the interview, the current neuropsychological test findings

7

were within normal limits." (Tr. 328). Finally, Dr. Cherry warned that medical providers working with Plaintiff should be aware that she "is at elevated risk for having some somatic health issues, thus they should corroborate symptom complaints with objective medical information whenever possible to avoid misdiagnosis and/or inappropriate treatment." (Tr. 332).

The ALJ gave "little weight" to Dr. Cherry's disability opinion, in part because Dr. Cherry believed that Plaintiff could be "quite successful with employment in the future" so long as she had the "right employment supports/childcare supports."[5] After Dr. Cherry's report, Plaintiff obtained additional treatment and in September 2014, she tapered off Cymbalta and reported an increase in energy and improved affect. (Tr. 25, citing Tr. 373). Many of her treatment notes reported that she was "stable," exhibited normal to "meticulous" hygiene, a cooperative mood, good insight and judgment, and normal thought processes. (Tr. 25; see also Tr. 425-426, 432). Within 24 hours of starting a new medication, Effexor, she reported feeling less anxious with even more improvement and no constant anxiety. (Id., citing Tr. 443). In February 2015, Plaintiff reported to her treating psychologist, Richard Harris, PsyD, that her medications were helpful. (Tr. 25). Dr. Harris repeatedly noted that Plaintiff had good eye contact, fluent speech, and good judgment, and that she was making progress toward her goals. (See, e.g., Tr. 686). By May 2015, Plaintiff reported feeling "peaceful" and less anxious, and her treating nurse practitioner observed that she "seems happy and cares for her daughter while living with her mother." (Tr. 706; Tr. 25).

---

[5]The ability to obtain childcare is not ordinarily relevant to the determination of disability under social security regulations.

Plaintiff left Alaska to move back to Ohio with her daughter in early July 2015 but did not re-establish psychiatric treatment until January 2016. At the time of the hearing, she was the primary caretaker for her daughter, was pregnant with a second child, and was living with her boyfriend who was helping to care for her daughter by providing breaks for her. A close friend also provided support. (Tr. 48, 50).

The ALJ pointed out that Dr. Cherry's opinions were limited by Dr. Cherry himself to the "present" and expressed hope for Plaintiff's improved abilities in the future. In contrast to Dr. Cherry's opinion that Plaintiff was disabled, the ALJ reasoned that:

> [t]he claimant has been able to consistently care for her daughter, maintain relationships, care for her household, and has not required inpatient psychiatric care of emergency crisis treatment. In addition, the validity of the evaluation is called into question due to a pattern of mild over reporting of issues....

(Tr. 27).

In this judicial appeal, Plaintiff argues that reversal is required because the ALJ "failed to cite substantial evidence showing that Fread-Sterkenburg has received the right employment and childcare supports and better resolution of her severe varied anxiety and mood disorder." (Doc. 10 at 8). She also argues that Dr. Cherry was well aware of the "limited validity" of his own test results yet still opined that Plaintiff was disabled. Plaintiff asserts that the ALJ improperly re-interpreted her neuropsychological exam results by rejecting Dr. Cherry's disability opinion.

It is true that an ALJ may not substitute his own medical judgment for that of a physician, so long as the medical opinion is supported by evidence. *See Bledsoe v. Com'r of Soc. Sec.*, 2011 WL 549861 at *7 (S.D. Ohio 2011). At the same time, it is the ALJ and not any physician who remains responsible to determine a claimant's residual functional capacity. *See* 20 C.F.R. § 404.1536(c). "When a treating physician...submits

9

an opinion on an issue reserved to the Commissioner – such as whether the claimant is 'disabled' or 'unable to work' the opinion is not entitled to any particular weight." *Turner v. Com'r of Soc. Sec.*, 381 Fed. Appx. 488, 492 (6th Cir. 2010); *see also* 20 C.F.R. § 416.927(d)(1).

Relevant to Dr. Cherry, there is no rule that requires an ALJ to expressly articulate "good reasons" when weighing the medical opinions of a one-time examiner like Dr. Cherry. *See Martin v. Com'r of Soc. Sec.*, 658 Fed. Appx. 255, 259 (6th Cir. 2016). Although the ALJ was not required to provide *any* specific reasoning, his reasons for discounting the opinions of Dr. Cherry in this case are substantially supported by the record as a whole, including but not limited to Plaintiff's treatment records following Dr. Cherry's consultative exam.

### b. Dr. Alshami, M.D.

Dr. Alshami was a treating psychiatrist in Ohio. Although Plaintiff moved back to Ohio in July 2015, she did not establish treatment with Dr. Alshami until January 2016,[6] and saw him just four times prior to the date he completed a Mental Impairment Questionnaire. In that June 2016 questionnaire, Dr. Alshami opined on a check-box form that Plaintiff was moderately limited in activities of daily living, but has "marked" limitations in the areas of maintaining social functioning and in her ability to sustain concentration, persistence, or pace. (Tr. 791). Dr. Alshami also opined that Plaintiff would be absent from work more than three times per month as a result of either her impairments or her treatment. (Tr. 789-791).

---

[6]Plaintiff testified that her delay was partly due to insurance issues, but was also attributable to being "really busy" fixing up her house. (Tr. 61-62).

"Marked" impairments that satisfy two "paragraph B" criteria are the hallmark of a Listing Level mental impairment. Therefore, Dr. Alshami's opinions that Plaintiff has "marked" impairments in two areas theoretically would have satisfied the criteria of one or more of the mental health Listings considered by the ALJ: 12.02, 12.04, or 12.06. However, Plaintiff does not expressly argue that she meets or equals any particular Listing. Instead, she more generally complains that the ALJ committed legal error in evaluating the opinions of both Dr. Cherry and Dr. Alshami.

The ALJ gave Dr. Alshami's assessment only "some weight," specifically declining to give it controlling weight "because it is unsupported by the medical record, and it is contradicted by substantial medical evidence including his own progress notes." (Tr. 27). The ALJ appropriately considered the length of treatment relationship and frequency of examination, and expressly considered all other relevant factors. (*Id.*) While an ALJ is required to provide "good reasons" for the weight given to the treating source's opinion, the ALJ is not required to provide "an exhaustive factor-by-factor analysis." *Francis v. Com'r of Soc. Sec.*, 414 Fed. Appx. 802, 804 (6th Cir. 2011).

Here, the ALJ pointed out that Dr. Alshami had seen Plaintiff only four times during a relatively short treating relationship and had assigned Plaintiff a "fair" prognosis. (*Id.*) However, Dr. Alshami's own treatment notes provided substantial evidence that undermined his medical opinions. The psychotherapy notes from a master's level therapist "describe the claimant as slightly anxious and mental status examinations by Dr. Alshami are within normal limits." (Tr. 25; *see also* Tr. 768, 772, 774). At a March 2, 2016 appointment with Dr. Alshami, Plaintiff reported feeling stable and by June 2016, her progress was deemed to be "normal with appropriate behavior," with no changes to

11

treatment. (*Id*.; *see* Tr. 764). In contrast to the work-preclusive limitations (including frequent absences) indicated on his mental impairment questionnaire,

> Dr. Alshami has consistently stated the claimant is stable and through the claimant's own testimony she is able to care for her daughter, have friends, go to the store, take medications, and attend appointments…. The claimant has endorsed the symptoms Dr. Alshami refers to, but they have remained moderate in nature and she has remained stable on conservative care including medication and therapy.

(Tr. 27). The ALJ's analysis of Dr. Alshami's opinions is substantially supported by the record and easily satisfies the "good reasons" standard.

In the context of her argument about the ALJ's evaluation of the medical opinion evidence, Plaintiff further argues that the ALJ over-relied on Plaintiff's ability to perform "some limited activities of daily living," without adequate analysis of Plaintiff's testimony that she has difficulty in completing her household chores. However, the ALJ fully explained why he did not find Plaintiff's subjective allegations to be fully credible. (Tr. 26). Plaintiff does not specifically challenge that credibility finding (which is substantially supported) in this appeal.

I find no error in the ALJ's assessment of Plaintiff's activity level vis a vis his evaluation of the medical opinions, or in the ALJ's overall non-disability determination. Plaintiff testified that she cared for her daughter while her mother worked full-time in Alaska and remains her daughter's primary caregiver in Ohio while her boyfriend works. Despite her testimony that dishes pile up in her sink, she testified that she prepares meals, and that her daughter is always fed and bathed, that she attends appointments, and generally manages her household. She uses the computer, plays online games, watches television, takes her daughter to the library, and crochets. (Tr. 26). Moreover, throughout the record Plaintiff's treatment notes consistently reflect her stable and only moderate symptoms, with occasional increases in symptoms due to relationship stress and

pregnancy, but without requiring anything more than the conservative care she has received. (Tr. 26).

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED**.

/s Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JANA FREAD-STERKENBURG, | Case No. 1:17-cv-780 |
| Plaintiff, | Dlott, J.<br>Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).